UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF ALTURAS, | No. 2:13-cv-00354-TLN-CMK |
| Plaintiff, | |
| v. | **ORDER** |
| ADKINS CONSULTING ENGINEERS, INC. and ANDERSON PERRY & ASSOCIATES, INC. | |
| Defendants. | |

This matter is before the Court on Plaintiff's Amended Motion to Vacate the Arbitration Award (ECF No. 18) and Defendants' Motion to Enforce the Arbitration Award (ECF No. 16). For the reasons discussed below, the Amended Motion to Vacate is denied and the Motion to Enforce is granted.

**I.    Background and Procedural History**

i.    Underlying facts

Plaintiff City of Alturas ("City") owns and operates a wastewater treatment facility (the "Facility") that discharges treated wastewater into the Pit River, a tributary of the Sacramento River. (Mem. Supp. Mot. to Vacate, ECF No. 1 at 8.)  Discharge from the facility is regulated by a National Pollution Discharge Elimination System Permit ("NPDES Permit"), which is issued by

1

the California Regional Water Quality Control Board ("RWQCB") every five years. (ECF No. 1 at 8.) Due to a history of disinfection problems and effluent limit violations for total coliform and chlorine residual, among other violations, in 2003 the RWQCB ordered the City to cease and desist from discharging wastewater into the Pit River (the "Order"). (ECF No. 1 at 9.) The Order mandated that the City develop improvements to the Facility necessary to bring it into compliance with the then-existing NPDES Permit, which the RWQCB issued in 2000. (ECF No. 1 at 9.)

To comply with the Order, the City entered into a written contract (the "Adkins Contract") with Adkins Consulting Engineers, Inc. ("Adkins") in November, 2005, pursuant to which Adkins agreed to provide civil engineering, structural design, and construction engineering services as part of a project to revamp the Facility. (ECF No. 1 at 9.) In turn, Adkins entered into a sub-consultant contract with Anderson Perry & Associates, Inc. ("Anderson Perry") to complete engineering and design services for the project.[1] (ECF No. 1 at 9.) Before signing its contract with Adkins, Anderson Perry prepared a Project Scoping Report, which identified the scope of improvements to the Facility necessary to meet the Cease and Desist Order and NPDES Permit. (ECF No. 1 at 9.) On or about February 28, 2006, Adkins amended its contract with the City, attaching and incorporating the Project Scoping Report prepared by Anderson Perry. (ECF No. 1 at 9.)

From 2006 to 2008, the Facility improvements were designed and constructed. (Def.'s Resp. Mot. to Vacate, ECF No. 14 at 8.) During that phase, in 2006, a new NPDES waste discharge permit was issued, which established more stringent discharge requirements than those contained in the 2000 NPDES permit.[2] On September 9, 2011, the California Regional Water

---

[1] The Court refers to Adkins and Anderson Perry collectively as "Defendants".

[2] The parties dispute the relevance of certain dates listed in the 2006 NPDES permit. The City reads the NPDES Permit as requiring it to complete the improvements to the Facility by November 2007, and appears to argue that Defendants' failure to complete the contracted design and construction by this date caused a violation of the Permit. (ECF No. 1 at 11–12.) Defendants assert that only the "Phase 1" improvements to the Facility, as described in the 2006 NPDES Permit, were to be completed by November 2007; Defendants assert that the date set for completion of the "Phase 2" requirements was May 2010. (ECF No. 14.) The Court declines to issue a judgment as to the relevance of these particular dates (among others contained in the 2006 NPDES Permit), but does find that the Arbitration Panel was briefed on the relevance of the November 2007 and May 2010 deadlines. (*See* Adkin's Rep. to Post-Hearing Br. at 6–8; ECF No. 1-9, Ex. 32 at 89–91.)

1  Quality Control Board issued an Administrative Civil Liability Complaint against the City,
2  finding and assessing fines based on its finding that the Facility was discharging wastewater with
3  levels of acute toxicity, coliform, and other harmful constituents that violated the 2003 Cease and
4  Desist Order and the 2006 NPDES permit.  (*See* ECF No. 1-6, Ex. 22.)  Allegations by the City
5  that Adkins failed to perform its contractual duties, and other alleged violations which caused the
6  Facility's apparent deficiencies, led the City to file a demand for arbitration.  (ECF No. 1 at 12.)

7      ii.       The Arbitration

8        On August 23, 2011, the City filed a demand for arbitration with the American Arbitration
9  Association, naming Adkins as a defendant and alleging breach of contract, professional
10 negligence, and negligent misrepresentation.  (ECF No. 1 at 12.)  Adkins demanded indemnity
11 from Anderson Perry and thereafter, the City amended its Demand to assert claims against
12 Anderson Perry.  (ECF No. 14 at 3.)  A three-member Arbitration Panel (the "Panel") was
13 subsequently appointed.  (ECF No. 14 at 3.)  On June 22, 2012, the Panel granted the City leave
14 to amend its demand to add a claim for breach of fiduciary duty against Adkins and Anderson
15 Perry.  (ECF No. 14 at 4.)

16       The arbitration hearing was held from October 8–11, 15–18, and 22–23 in Portland,
17 Oregon.  (ECF No. 14 at 6.)  By stipulation, the arbitration proceedings were not transcribed or
18 recorded.  (ECF No. 14 at 6.)  The parties submitted post-hearing briefings.  (ECF No. 1 at 12.)

19       On January 3, 2012, the Panel issued an Interim Award, denying the City relief with
20 prejudice.  (Interim Award at 5; ECF No. 1-9, Ex. 33 at 106.)  On February 21, 2013, the Panel
21 issued a Final Award, affirming the Interim Award and ordering that the City bear the costs of
22 arbitration.[3]  (Final Award at 5; ECF No. 1-9, Ex. 34 at 114.)

23     iii.      Procedural history before this Court

24       On February 21, 2013, the City filed a Motion to Vacate the Arbitration Award with the

---

[3] With respect to arbitration expenses, the Final Award reads as follows: "The administrative fees and expenses of the American Arbitration Association totaling $16,050.00, and the compensation and expenses of the arbitrators totaling $252,726.40, shall be born by Claimant.  Therefore, Claimant shall reimburse (i) Respondent Adkins the sum of $88,841.36 and (ii) Respondent Anderson Perry the sum of $84,241.36 for amounts deposited previously by those respondents with the AAA for these purposes." (Final Award at 6; ECF No. 1-9, Ex. 34 at 115.)

28

3

instant Court (ECF No. 1).  On April 5, 2013, Defendants filed a Response to the Motion to Vacate (ECF No. 14) and a Motion to Enforce the Arbitration Award (ECF No. 16).  On April 10, 2013, the City filed an Amended Motion to Vacate (ECF No. 18).  On June 6, 2013, the City filed an Opposition to Defendants' Motion to Enforce the Arbitration Award (ECF No. 19).  On June 13, 2013, the City filed a Reply in Support of the Motion to Vacate (ECF No. 21).

  iv. <u>The instant Motions to Vacate / Enforce the award</u>

  The Court now considers the City's Amended Motion to Vacate (ECF No. 18) and the Defendants' Motion to Enforce (ECF No. 16) the arbitration award.  As discussed below, allegations that Defendants violated various California licensure regulations form the basis for the City's vacatur motion.  These allegations include: Anderson Perry was not a licensed engineering firm in California, yet it prepared the Project Scoping Report that Adkins incorporated into its contract with the City.  (ECF No. 1 at 3.)  Employees of Anderson Perry communicated with City and State officials and regulatory agencies, holding themselves out as professional engineers.  (ECF No. 1 at 3.)  Anderson Perry's project manager, who was not a licensed engineer in California, signed the Final Acceptance Report for the project, stating falsely that the completed project met its intended design standards.  (ECF No. 1 at 3.)  Although the City cites to various authorities for the requirement that engineers doing work in California must be licensed, its chief authority appears to be the California Business and Professions Code § 6738(a), which provides generally that for an out-of-state engineering business to practice in California, an officer in charge of the practice must be licensed in California.[4]  (*See* ECF No. 1 at 21–23.)

---

[4] Cal. Bus. & Prof. Code § 6738(a):

> This chapter does not prohibit one or more civil, electrical, or mechanical engineers from practicing or offering to practice, within the scope of their license … if all of the following requirements are met: (1) A civil, electrical, or mechanical engineer currently licensed in this state is an owner, partner, or officer in charge of the engineering practice of the business; (2) All civil, electrical, or mechanical engineering services are performed by, or under the responsible charge of, a professional engineer licensed in the appropriate branch of professional engineering; (3) If the business name of a California engineering business contains the name of any person, then that person shall be licensed as a professional engineer, a licensed land surveyor, a licensed architect, or a geologist ….

4

These allegations form the basis for the City's arguments that: 1) the Arbitrators manifestly disregarded the law; 2) the underlying contract between the City and Adkins was illegal, thus voiding the provision to arbitrate; and 3) enforcement of the arbitration must be voided because enforcement violates a public policy against unlicensed contract work. (*See* ECF No. 1.)

## II.     Standard of Review

The Adkins contract at issue called for engineering services across Oregon and California state lines, and as such is "a contract evidencing a transaction involving commerce" that comes within the purview of the Federal Arbitration Act. 9 U.S.C. § 2; *see Johnson v. Gruma Corp*. 614 F.3d 1062, 1066 (9th. 2010). When a contract falls within the purview of the FAA, there is a "strong default presumption … that the FAA, not state law, supplies the rules for arbitration." *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269 (9th Cir. 2000). This presumption includes review of the arbitration award for purposes of confirmation and vacatur.[5]  *See Kim-C1, LLC v. Valent Biosciences Corp*. 756 F.Supp.2d 1258, 1262 (E.D. Cal. 2010); *Johnson*, 614 F.3d at 1067.

If a party seeks to have an arbitration award confirmed by a federal court, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Section 10(a) permits vacatur:

> (1) where the award was procured by corruption, fraud, or undue means;

---

[5] A party may overcome the presumption of FAA applicability by evidencing a clear intention to incorporate state rules for arbitration. *Fid Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1311 (9th Cir. 2004); *Sovak*, 280 F.3d at 1269. Here, the contract between the City and Adkins, and the subcontract between Adkins and Anderson, contained a choice of law provisions mandating the application of Oregon law with respect to governance of the contracts. (2005 City & Adkins Agr. Prof. Serv. at 3, ECF No. 1-3, Ex. 3 at 74; 2006 Adkins & Anderson Perry Agr. Prof. Serv. at 10, ECF No. 1-3, Ex. 4 at 98.) However, "[A] general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration." *Fid. Fed. Bank*, 386 F.3d at 1312; *Sovak,* 280 F.3d at 1270; *Johnson,* 614 F.3d at 1066. A general choice of law clause will be interpreted as electing state substantive law and FAA procedural law. *Id*. As an additional matter, the Court notes the City's claim that the choice of law provisions in the contracts are not applicable; however, the City does not further argue as to what effect this request has upon FAA review. (*See* ECF No. 1 at 7–8.) It does not appear that the City is arguing that the FAA is inapplicable, and indeed the City relies upon the FAA extensively in its briefing. (*See* ECF No. 1 at 8, 15–17.)

5

>(2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
>(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
>(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  Section 10 "provides the exclusive means by which a court … may grant vacatur of a final arbitration award, and that such review is limited." *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 664 (9th Cir. 2012) (referencing *Kyocera Corp. v. Prudential-Bache Trade Services, Inc.* 341 F.3d 987, 997–998 (9th Cir. 2003); *Hall St. Assoc., v. Mattel, Inc.* 552 U.S. 576, 584 (2008)).  "[Section] 10 of the FAA provides no authorization for a merits review." *Id*. "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the [FAA], which is unambiguous in this regard." *Kyocera Corp*. 341 F.3d at 994.

**III.   Analysis**

  i.   Manifest disregard of the law: *Montes v. Shearson Lehman Bros*.

Under 9 U.S.C. § 10(a)(4), arbitrators exceed their powers when the award "exhibits a manifest disregard of law." *Biller v. Toyota Motor Corp.* 668 F.3d 655, 665 (9th Cir. 2012). "Manifest disregard of the law means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Id*. "To vacate an arbitration award on this ground, it must be clear from the record that the arbitrators recognized the applicable law and ignored it." *Id*. That is, "a moving party must show that the arbitrator understood and correctly stated the law, but proceeded to disregard the same." *Bosack v. Soward,* 586 F.3d 1096, 1104 (9th Cir. 2009).

6

Under this line of argument, the City cites *Montes v. Shearson Lehman Bros*., 128 F.3d 1456, 1461-62 (11th Cir. 1997) for the following rule: where facts do not support an arbitration award based on applicable law, and the award granted fails to indicate that the arbitrator had been urged to ignore the applicable law but had rejected it, then the award must be vacated as manifestly disregarding the law. (ECF No. 1 at 16.)

The City references the fact that on October 5, 2012, shortly before the Arbitration Hearings, it filed a motion in limine to preclude Defendants from offering into evidence any expert reports or testimony on the standard of care required by Defendants, on the basis that Defendants were negligent *per se* due to alleged violations of California's engineering licensing laws. (ECF No. 1 at 13; ECF No. 14 at 5.) The City contends that Anderson Perry had in fact conceded that its position was not supported by law, because in its briefing during and after the arbitration, it stated that the Arbitration panel had no legal authority to address the issue of license law violations. (ECF No. 1 at 4.) Ultimately, the Final Award stated that the arbitrators had considered the doctrine of negligence *per se* in making the award, but it does not state that the arbitrators also considered and rejected Anderson Perry's argument against ruling on the issue of licensing violations. (Final Award at 5; ECF 1-9, Ex. 34 at 114.) Thus, the City argues, the Arbitrators committed the same error as in *Montes*, and the Award should be vacated.

The Court finds the City's argument unpersuasive. It is undisputed that the parties agreed that the Award need not be explained in narrative fashion. (Final Award at 4; ECF 1-9, Ex. 34 at 113.) Moreover, the arguments before the Arbitration Panel regarding the licensing issue, as set out by the City, is not analogous to the type of request made in *Montes*. In *Montes*, the attorney for Shearson Lehman Brothers argued at the hearing that the applicable law was inequitable, that to apply the law would be neither fair, nor right, nor proper, and that the arbitrators were not bound by case law and precedent.[6] *Montes,* 128 F.3d at 1459. Here, Anderson Perry argued that

---

[6] In full, Shearson's attorney stated to the arbitration panel: "You have to decide whether you're going to follow the statutes that have been presented to you, or whether you will do or want to do or should do what is right and just and equitable in this case. I know it's hard to have to say this and it's probably even harder to hear it but in this case this law is not right. Know that there is a difference between law and equity and I think, in my opinion, that difference is crystallized in this case. The law says one thing. What equity demands and requires and is saying is another. What is right and fair and proper in this? You know as arbitrators you have the ability, you're not strictly bound by case law

7

the Panel was not the appropriate body to consider the licensing violations because the authority to investigate the credentials of an engineer is invested with the Board for Professional Engineers and Land Surveyors. (*See* And. Perry's Post-Arb. Brief at 14–18; ECF No. 1-9, Ex. 29 at 20–23.) These arguments do not constitute an explicit request that the Panel disregard the applicable law. Accordingly, the Court does not find that the Panel manifestly disregarded the law as articulated in *Montes*.[7]

    ii.    <u>Manifest disregard of the law on other grounds</u>

The City argues that even if the *Montes* ruling does not apply, the Panel's ruling for Defendant's, in light of the obvious licensure violations, still amounts to a manifest disregard of the law. (ECF No. 1 at 22.) The Court is not persuaded by this argument because, even if the licensing violations were unlawful, the City has not produced evidence that the Panel did more than simply fail to understand or apply the law. *See Biller*, 668 F.3d at 665. Even if the licensing allegations amounted to illegality, the City has not produced evidence that the arbitrators understood and correctly stated the law, and then proceeded to disregard it. *See Bosack*, 586 F.3d at 1104.

    iii.    <u>Illegality</u>

The City directs the Court's attention to Cal. Bus & Prof. Code § 6738(a), which provides generally that for an engineering firm to lawfully practice engineering in California, the officer in charge of the practice must be licensed in California. (ECF No. 1 at 21–23.) The City contends Anderson Perry violated these requirements because it did not have a licensed officer in charge of the practice at the time it prepared the Project Scoping Report, which was incorporated into the

---

and precedent. You have the ability to do what is right, what is fair and what is proper, and that's what Shearson is asking you to do." *Montes,* 128 F.3d at 1459.

[7] *See also* the concurring opinion of Justice Carnes, *Montes* 128 F.3d at 1464. "I …write separately only to emphasize how narrowly the decision in this case is limited to the unusual facts presented. Those facts are that: 1) the party who obtained the favorable award had conceded to the arbitration panel that its position was not supported by the law, which required a different result, and had urged the panel not to follow the law; 2) that blatant appeal to disregard the law was explicitly noted in the arbitration panel's award; 3) neither in the award itself nor anywhere else in the record is there any indication that the panel disapproved or rejected the suggestion that it rule contrary to law; and 4) the evidence to support the award is at best marginal. The Court does not imply that it would find a manifest disregard of the law based on anything less than all of those factors."

City's contract with Adkins. (ECF No. 1 at 22.) The City argues that its entire contract with Adkins was therefore illegal, and thus invalid and unenforceable; it further argues that the illegality extends to invalidate the arbitration provision contained therein. (ECF No. 1 at 23.)

However, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id*. Accordingly, the City's challenge to the contract as a whole as "illegal" does not disturb the arbitrator's prerogative to render an award in this case.

Additionally, the City directs the Court to *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002) and *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165 (9th Cir. 2003). (*See* ECF No. 1 at 21.) As *Circuit City v. Adams* discusses: Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, *save upon such grounds that exist at law or in equity for the revocation of any contract*." 9 U.S.C. § 2 (emphasis added); *see Circuit City v. Adams,* 279 F.3d at 892. Accordingly, federal courts have applied ordinary state-law principles, such as allegations of fraud, duress, or unconscionablity, to invalidate an agreement to arbitrate. *Circuit City v. Adams*, 279 F.3d at 892 (referencing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996).) However, the issue in both *Circuit City v. Adams* and *Ingle v. Circuit City* was the enforceability of the parties' specific agreement to arbitrate (the arbitration agreement being the central purpose of the contract) given questionable grounds of conscionability. *Circuit City v. Adams,* 279 F.3d at 893–95; *Ingle v. Circuit City*, 328 F.3d 1171–1176. These issues are inapposite to the instant case. The City does not argue that its entry into the arbitration agreement was illegal based on a defense such as unconscionability. Rather, the City asks this Court to conduct a searching review of the arbitrator's examination of licensure violations. These allegations were presented to the Arbitration Panel (ECF No. 1 at 13–15; ECF No. 14 at 3–7). The Ninth Circuit has clearly held: "Neither erroneous legal conclusions nor unsubstantiated

9

factual findings justify federal court review of an arbitral award under [the FAA], which is unambiguous in this regard." *Kyocera Corp.*, 341 F.3d at 994. Therefore the Court declines to vacate the arbitration award based on grounds that the underlying contract was illegal.

    iv.    <u>Public policy</u>

The Ninth Circuit recognizes a narrow exception to enforcement of arbitration awards under the FAA when an award is contrary to public policy. *See Matthews v. National Football League Management Council*, 688 F.3d 1107, 1111 (9th Cir. 2012); *Aramark Facility Servs. v. SEIU, Local 1877*, 530 F.3d 817, 823 (9th Cir. 2008); *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, etc.* 886 F.2d 1200, 1212–1213 (9th Cir. 1989).[8] To vacate an arbitration award on public policy grounds, a court must "(1) find that an explicit, well defined and dominant public policy exists and (2) that the policy is one that specifically militates against the relief ordered by the arbitrator." *Aramark Facility Servs.*, 530 F.3d at 823. Furthermore, in evaluating a public policy argument, the focus must be "on the award itself, not the behavior or conduct of the party in question." *Id*.

In the instant case, the City argues that the alleged licensure violations constitute a violation of California's strong public policy against the performance of unlicensed contract work in California. (ECF No. 1 at 18.) The City relies primarily on a recent decision of the California Court of Appeal in *Ahdout v. Hekmatjah*, 213 Cal. App. 4th 21 (2013), which reversed a trial court order denying a motion to vacate on the grounds that the arbitrator had improperly failed to enforce Cal. Bus. & Prof. Code § 7031. Cal. Bus. & Prof. Code § 7031 prevents an unlicensed contractor from bringing an action to collect compensation, and provides a right for a person who utilizes the services of an unlicensed contractor to recover compensation paid to that contractor.[9]

---

[8] The federal case law cited by both the City and Defendants, with respect to the public policy exception to the enforcement of arbitration awards, involves the arbitration of labor disputes. (*See* ECF No. 1 at 19; ECF No. 14 at 28–29.) The Court does not wish its discussion here to extend, to contractual disputes such as the instant one, public policy arguments that may be relevant only to the labor law context.

[9] *See* Cal. Bus. & Prof. Code § 7031(a) and (b):

> (a)… no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation … where a license is

While the *Ahdout* decision appears to confirm a public policy in California against the unlicensed performance of contract work, its application is not appropriate in the instant case. The statutes primarily referred to by the City are Cal. Bus & Prof. Code § 6738 and 16 Cal. Code Regs. § 400 *et seq.*, which mandate that an engineering firm practicing in California have an officer in charge that is licensed in California. (ECF No. 1 at 19, 22.)  The City has not shown why Cal. Bus & Prof. Code § 7031 should apply in this case; more fundamentally it has not shown why California case law should supersede this Court's review of the arbitration award under the FAA.  Additionally, the City does not address the fact that its contract was with Adkins, and there does not appear to be a dispute that Adkins and its relevant officers were licensed engineers in California. (*See* ECF No. 1 at 23; ECF No. 14 at 25.)  Were the City to articulate an applicable, well-established public policy, it still has not indicated that such a policy would specifically militate against the relief ordered by the arbitrator in this case. *See Aramark Facility Servs.*, 530 F.3d at 823.  Accordingly, the Court declines to vacate the Final Award on public policy grounds.

### iv.     Conclusion

The City of Alturas's Amended Motion to Vacate the Arbitration Award (ECF No. 18) is denied.  Defendants' Motion to Enforce the Arbitration Award (ECF No. 16) is granted.

Dated: March 21, 2014

Troy L. Nunley
United States District Judge

---

required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract … (b) … a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract.

11